IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENZO TRICOCI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 5445 |
| ) | |
| DANIEL BLACKMAN, MICHAEL ) | |
| MARTINEZ, JOHNNY SANTIAGO, ) | |
| JAMES RASSO, NAVEEN FRANCIS, ) | |
| TOMASZ SIKORSKI, CYRUS ) | |
| MARTINEZ, and CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Vincenzo Tricoci has sued the City of Chicago and Chicago police officers Daniel Blackman, Michael Martinez, Johnny Santiago, James Rasso, Naveen Francis, Tomasz Sikorski, and Cyrus Martinez for violation of his constitutional rights under 42 U.S.C. § 1983 and Illinois state law. Tricoci's claims arise from events, including his arrest, that occurred on the evening of October 5, 2020. Tricoci asserts claims for (1) illegal seizure in violation of the Fourth Amendment (count one); (2) use of excessive force when he was initially arrested and when he was at Swedish Covenant Hospital in violation of the Fourth Amendment (count two); (3) failure to intervene during his illegal seizure in violation of the Fourth Amendment (count three); (4) failure to intervene during the excessive uses of force in violation of the Fourth Amendment (count four); (5) respondeat superior under Illinois common law (count five); and (6) indemnification

under 745 ILCS 10/9-102 (count six).

The defendants have moved for summary judgment on all of Tricoci's claims. They argue as to count one that Blackman and Martinez had reasonable suspicion to seize Tricoci[1]; as to count two that the use of force during Tricoci's arrest was reasonable and that no excessive force was used at Swedish Covenant Hospital; as to counts three and four that there is no underlying constitutional violation to support a failure to intervene claim, and as to count three that only Blackman and Martinez were involved in the seizure of Tricoci. Defendants argue as to counts five and six that the City of Chicago may not be liable under a theory of respondeat superior or indemnification for misdeeds of employees or agents of the municipality when there is no underlying constitutional violation. In the alternative, defendants argue that the officers are entitled to qualified immunity regarding counts one, two, three, and four. For the reasons described below, the Court grants summary judgment in favor of defendants on all of Tricoci's claims except for his claims arising from the alleged use of force at Swedish Covenant Hospital.

## Background

The following facts are undisputed except where otherwise noted, and when disputed they are taken in the light most favorable to Tricoci as the nonmoving party.

On the evening of October 5, 2020, Tricoci was driving a moped through the intersection of Bryn Mawr Avenue and Broadway Street in Chicago, heading toward Ridge Avenue. Officers Blackman and Martinez were on patrol in the area in an

---

[1] Defendants have withdrawn their arguments for dismissal arising from application of issue preclusion and from *Heck v. Humphrey*, 512 U.S. 477 (1994).

unmarked police vehicle. They observed Tricoci drive through the intersection on a moped. Blackman and Martinez, believing that Tricoci was illegally operating the moped without a headlight at night and making illegal righthand turns through no-turn-on-red intersections, initiated a traffic stop. At some point during the officers' pursuit of him, Tricoci crashed his moped. After crashing, Tricoci ran away from the moped, heading northbound on Broadway. Blackman pursued Tricoci on foot while Martinez remained with the police car. As Tricoci ran toward the intersection of Bryn Mawr and Broadway, Blackman believed he observed Tricoci carrying a large, shiny metal object. Tricoci states he was not carrying anything.

Cars were stopped at a red light when Tricoci entered the intersection on foot. As Tricoci ran near one of the cars, Blackman caught up to Tricoci. Blackman says he believed that Tricoci was reaching toward a car stopped in the intersection; Tricoci asserts that he was merely running away and that the car happened to be in his path. Blackman, operating under the belief that Tricoci was carrying a metal object and reaching toward a car, administered an emergency takedown—he basically tackled Tricoci. As a result, Tricoci says, his face was slammed into the ground. Blackman then placed Tricoci in handcuffs. No other officer helped Blackman handcuff Tricoci, and no other officer besides Martinez was on the scene at the time Tricoci was arrested.

At this point, Tricoci was lying in the middle of the street and was unable to move due to an injured leg. A short time later, officers Santiago, Rasso, Francis, Sikorski, and Cyrus Martinez arrived at the scene. Though traffic could flow around Tricoci, a truck had been directed to the side of the road and was unable to leave with Tricoci in his current position. To permit the truck to leave, Blackman moved Tricoci toward the curb

by dragging him on the ground, as Tricoci could not stand. Blackman states that he moved Tricoci by grabbing underneath his arm and by his jacket. Tricoci says that Blackman dragged him by the handcuffs, resulting in his arms being wrenched above his head.

Throughout the incident, Tricoci complained of severe pain in his leg and that he had smacked his head on the ground during the emergency takedown. Accordingly, an ambulance was called, and Tricoci was taken to Swedish Covenant Hospital. Officer Francis rode in the ambulance with Tricoci; Francis's partner, officer Rasso, followed behind. Francis and Rasso escorted Tricoci into the hospital. While entering the hospital, Tricoci says, a police officer who was pushing the wheelchair slammed Tricoci's injured leg into a wall. Tricoci cannot identify this officer because the officer was behind him. Francis and Rasso deny pushing Tricoci in a wheelchair and also deny pushing Tricoci into a wall.

Tricoci was charged by the Cook County State's Attorney's Office with the following offenses: 520 ILCS 5.0/1.22: resisting / obstructing an officer; 625 ILCS 5/11-503(A)(1): reckless driving; 625 ILCS 5.0/6-303-A: driving on a revoked license; Chicago Municipal Code § 9-76-050(A): driving without a headlight; Chicago Municipal Code § 9-16-050(B): failing to properly signal; Chicago Municipal Code § 9-8-020(C)(1): disobeying traffic lights; Chicago Municipal Code § 9-16-030(C): turn on red prohibited; and Chicago Municipal Code § 9-16-040(A): improper U-turn. On January 27, 2022, Tricoci pleaded guilty to driving on a revoked license. The factual basis for Tricoci's guilty plea was that he was driving on a revoked license at 5600 N. Broadway in Chicago on October 5, 2020. All other charges were dismissed *nolle prosequi*.

## Discussion

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation and quotation marks omitted). The Court, when considering a motion for summary judgment, is required to view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Merely showing the existence of some factual dispute between parties is not enough to defeat a properly supported motion for summary judgment—"the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When the evidence, considered as a whole, would not lead a rational trier of fact to find for the nonmoving party, no genuine dispute of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met its burden to justify the basis for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotation marks omitted). A genuine issue of material fact exists when, in drawing all reasonable inferences from the record in the light most favorable to the nonmoving party, a reasonable trier of fact could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248. Not all inferences, however, are reasonable: "When video footage firmly settles a factual issue, there is no genuine dispute about it, and we will not indulge stories clearly

contradicted by the footage. Of course, videos are sometimes unclear, incomplete, and fairly open to varying interpretations." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

A.     **Illegal seizure claim**

Tricoci contends that Blackman and Michael Martinez illegally seized him when they swerved their police car toward his moped and caused him to crash. Blackman and Martinez deny swerving their car toward Tricoci and contend they had the requisite reasonable suspicion at the time to execute a legal traffic stop. Based on the record before the Court, it is undisputed that the police car did not strike Tricoci—in other words, Tricoci did not crash as a result of being hit by Blackman's car. It is likewise undisputed that the first time Tricoci was physically touched was when Blackman tackled Tricoci in the intersection.

A seizure under the Fourth Amendment requires "a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted). Taken together, "[a] seizure requires not only that the reasonable person feel unfree to leave, but also that the subject actually yields to a show of authority from the police or be physically touched by police. Under this test, a police officer who chases a fleeing suspect unsuccessfully has not seized the person. . . . [A] fleeing person who continues to flee has not [been seized]." *Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992).

To effectuate a legal seizure under the Fourth Amendment, an officer must have

contradicted by the footage. Of course, videos are sometimes unclear, incomplete, and fairly open to varying interpretations." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018).

A.     **Illegal seizure claim**

Tricoci contends that Blackman and Michael Martinez illegally seized him when they swerved their police car toward his moped and caused him to crash. Blackman and Martinez deny swerving their car toward Tricoci and contend they had the requisite reasonable suspicion at the time to execute a legal traffic stop. Based on the record before the Court, it is undisputed that the police car did not strike Tricoci—in other words, Tricoci did not crash as a result of being hit by Blackman's car. It is likewise undisputed that the first time Tricoci was physically touched was when Blackman tackled Tricoci in the intersection.

A seizure under the Fourth Amendment requires "a governmental termination of freedom of movement *through means intentionally applied*." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted). Taken together, "[a] seizure requires not only that the reasonable person feel unfree to leave, but also that the subject actually yields to a show of authority from the police or be physically touched by police. Under this test, a police officer who chases a fleeing suspect unsuccessfully has not seized the person. . . . [A] fleeing person who continues to flee has not [been seized]." *Tom v. Voida*, 963 F.2d 952, 957 (7th Cir. 1992).

To effectuate a legal seizure under the Fourth Amendment, an officer must have

probable cause to detain an individual. *See, e.g.*, *Whren v. United States*, 517 U.S. 806 (1996). The Supreme Court has found that this protection applies to automobile stops. *Id.* at 809 ("Traffic stops are seizures, so they must be reasonable under the circumstances."). "Because traffic stops are typically brief detentions, more akin to Terry stops than formal arrests, they require only reasonable suspicion of a traffic violation—not probable cause." *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021); *see also Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Under this standard, the reasonableness of a traffic stop is limited by the circumstances justifying the stop in the first place. *See Rodriguez*, 575 U.S. at 354 ("A seizure for a traffic violation justifies a police investigation of that violation."). Prolonging the traffic stop beyond what is necessary to investigate the underlying cause for the stop "violates the Fourth Amendment unless the officer has reasonable suspicion of other criminal activity to independently justify prolonging the stop." *Cole*, 21 F.4th at 428.

Tricoci asserts that he was illegally seized when officer Blackman swerved his police car toward Tricoci, causing him to lose control of his moped and crash. This argument, however, does not comport with the legal standard for when a seizure has occurred. There is no evidence that Tricoci crashed as a result of being physically struck by the police car. And after crashing on the moped, Tricoci proceeded to run toward the intersection at Bryn Mawr and Broadway—in other words, he did not yield to the officers' authority when they initially tried to pull him over. Accordingly, Tricoci was not seized at that time. Rather, Tricoci was first seized when Blackman pursued him into the intersection and executed the emergency takedown. At that point, and not before, Tricoci's freedom of movement was restrained through intentional means.

That aside, the facts are also clear that Blackman and Martinez had reasonable suspicion for a traffic stop based on their observations of Tricoci's maneuvers. Though Tricoci emphasizes that he was unaware that it is illegal to make a right turn on a red light at Bryn Mawr and Broadway, he acknowledges that the intersection is, in fact, a no-turn-on-red intersection. Pl.'s Resp. to Defs.' Stat. of Undisputed Facts ¶ 10. And it is illegal to make a right turn on a red light at a no-turn-on-red intersection under Illinois law. Blackman and Martinez thus had reasonable suspicion that Tricoci had committed a traffic violation, which in turn was sufficient to permit them to stop him. Tricoci's subsequent flight from the crash site extended reasonable suspicion under the circumstances to prolong the stop and allow Blackman to pursue and seize Tricoci. No reasonable jury could find otherwise.

Ultimately, whether Tricoci was seized when he crashed the moped or when he was tackled in the intersection does not change the analysis. Because Blackman and Martinez had reasonable suspicion in both circumstances to detain Tricoci, they did not violate Tricoci's Fourth Amendment right to be free from unreasonable seizure. Accordingly, this Court grants summary judgment as to count one.

B. **Excessive force claim**

Tricoci contends that Blackman twice used excessive force: (1) when he executed the emergency takedown and (2) when he pulled Tricoci while he was on the street and handcuffed. Tricoci also contends that an officer slammed him into a wall while the officer was pushing him in a wheelchair at Swedish Covenant Hospital. Blackman contends that both instances where he used force were reasonable; Francis and Rasso deny pushing Tricoci into a wall while at Swedish Covenant.

A claim of excessive force is evaluated under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Courts must pay "careful attention to the facts and circumstances of each particular case"; relevant factors include "the severity of the crime, whether the arrestee poses an immediate threat to the safety of the officers or others, and whether he or she is actively resisting arrest or attempting to flee and evade arrest." *Id.* at 396. When applying these factors, a court must consider that "police officers are often forced to make split-second judgments" and therefore "a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20 / 20 vision of hindsight." *Id.* at 396–97.

### 1. Blackman's emergency takedown

Tricoci first alleges that Blackman used excessive force when he took Tricoci down on the street. The depositions and bodycam footage show that no reasonable jury could find this use of force was unreasonable under the totality of the circumstances. Though Blackman initiated the traffic stop for a relatively minor infraction, it is undisputed that, at the time, Tricoci was running away from Blackman and toward an intersection where several cars were stopped. Blackman says he observed Tricoci carrying a shiny metal object as he ran toward the intersection. Though Tricoci disputes this, Blackman's bodycam footage shows an object in Tricoci's hand. Because video footage clearly settles this factual issue, no reasonable jury could find otherwise, and there is no genuine dispute of material fact. *See Horton*, 883 F.3d at 944.

Blackman also says he believed Tricoci was reaching toward a car; Tricoci contends that he was merely reaching forward to break his fall as he was being tackled

9

by Blackman. The same bodycam footage shows Tricoci was close enough to a car in the intersection to place his hand on the car's window just prior to the emergency takedown. Though "videos are sometimes unclear, incomplete, and fairly open to varying interpretations," Blackman's bodycam footage shows Tricoci running away, carrying a metal object, and heading toward a crowded intersection, where he came close enough to a car to make contact with the driver's side window. *Id.* at 944. Video evidence shows that there are no material facts that could be genuinely disputed by a reasonable jury regarding the circumstances immediately prior to the emergency takedown.

Though there are arguably facts in dispute, none are material. *See Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987) ("The mere existence of a factual dispute will not bar summary judgment unless 'the disputed fact is outcome determinative under governing law.'") (citation omitted). It is undisputed that Tricoci was running away from the crashed moped, but there are disputes regarding his state of mind at the time. Tricoci states that he was running because he feared for his life and that he did not know police officers were in the unmarked SUV that was pursuing him and did not observe the SUV flash its lights or blare its siren; Blackman asserts that he flashed his lights and siren when initiating the traffic stop. An individual's subjective reason for running from police, however, is not a factor appropriately considered when evaluating the objective reasonableness of the responding officer's actions. *See Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable *officer* on the scene . . . . [T]he question is whether the *officers'* actions are 'objectively reasonable' in light of the facts and circumstances

10

confronting them . . . .") (emphasis added) (citations omitted).

Under these circumstances, no reasonable jury could find Blackman's use of force was unreasonable. Defendants are thus entitled to summary judgment for this instance of force in count two.

2. **Blackman's "dragging" of Tricoci while handcuffed**

Tricoci next contends that Blackman dragged him through the street by his handcuffs. But again, bodycam footage from multiple angles demonstrates that is not what happened.

As an initial matter, Blackman must justify moving Tricoci at all; Tricoci was handcuffed and no longer posed a flight risk or threat to safety. *See Graham*, 490 U.S. at 396–97 (finding that the reasonableness of a particular use of force is assessed "in light of the facts and circumstances confronting [a law enforcement officer]" at the time force is used). It is undisputed that a truck had pulled over to the side of the road when Tricoci was arrested in the intersection. Over the course of the arrest, the truck became wedged between parked cars, police cars that had arrived at the scene, and Tricoci, who was still lying in the middle of the eastbound lane on Bryn Mawr. An ambulance arrived accompanied by a fire truck; the ambulance had been called due to Tricoci's claimed injuries. Neither the ambulance nor the fire truck could approach the intersection given where the truck was positioned. To permit the truck to safely leave, Blackman had to move Tricoci out of the way. Though Tricoci contends otherwise, Blackman's bodycam footage clearly shows that Tricoci was in the truck's path and needed to be moved to safety. No reasonable jury could find otherwise based on the bodycam footage.

Having justified the need to move Tricoci at all, Blackman's manner in moving Tricoci still has to be objectively reasonable. In the bodycam footage, Blackman can be seen grabbing Tricoci from underneath the arm and by the sleeve of his jacket. Though Blackman did drag Tricoci several feet through the street, this was only after attempting unsuccessfully to bring Tricoci to his feet. Tricoci's own statements confirm that he was unable to stand. And the bodycam footage shows a flurry of activity, with numerous police cars blocking the truck and the ambulance and fire truck approaching the intersection. Thus Blackman's only option to move Tricoci to safety was to pull him while on the ground. Because Blackman used only the force necessary to move Tricoci out of the line of traffic to a safer location—which is supported by video from Blackman's bodycam—no reasonable jury could find this use of force was unreasonable under the circumstances. The defendants are entitled to summary judgement regarding this use of force as well.

3. "Slammed into wall" at Swedish Covenant

Tricoci finally alleges that an unknown officer pushed him into a wall while he was in a wheelchair at Swedish Covenant Hospital. Tricoci was in a wheelchair as a result of injuring his leg during the emergency takedown. At the time of the alleged wheelchair incident, Tricoci was handcuffed, and there is no contention he was resisting the officers in any way. Once an individual has been secured, there is no longer a concern for flight or safety, and even "one violent push or poke" is enough to constitute excessive force. *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 475–76 (7th Cir. 1997). Unlike with the alleged uses of force when Tricoci was initially arrested, there is no bodycam footage or hospital footage to support or undermine Tricoci's claim. Rather, there are

12

competing versions of what transpired while Tricoci was being pushed into Swedish Covenant Hospital. Thus there is a genuine factual dispute regarding whether an officer did knowingly push Tricoci into a wall while at Swedish Covenant Hospital. It is undisputed that officers Naveen Francis and James Rasso were present when Tricoci was escorted into Swedish Covenant.

For these reasons, Francis and Rasso are not entitled to summary judgment on the third claim of excessive force contained in count two. By contrast, Blackman, Martinez, Santiago, Sikorski, and Cyrus Martinez are entitled to summary judgment regarding this alleged use of force.

**C. Failure to intervene claims**

Tricoci also contends that the officers who arrived on the scene after his initial encounter with Blackman and Michael Martinez violated his constitutional rights by failing to intervene despite having an opportunity to do so. Specifically, Tricoci asserts claims against officers Santiago, Rasso, Francis, Sikorski, and Cyrus Martinez for failing to intervene during his initial seizure by Blackman and Michael Martinez and for failing to intervene to prevent Blackman from dragging him in the street. Tricoci also brings a failure to intervene claim against Blackman, Michael Martinez, Santiago, Rasso, Francis, Sikorski, and Cyrus Martinez for failing to intervene when he was pushed into a wall at Swedish Covenant. Defendants assert that only Blackman was present when Tricoci was initially seized, that Blackman's use of force was reasonable to move Tricoci through the street, and that Tricoci was not pushed into a wall at the hospital. Under these circumstances, defendants allege there was no duty to intervene.

An officer may be liable under section 1983 for failing to intervene to prevent a

13

constitutional violation if he or she is present at the time the violation occurs and fails to intervene despite having reason to know "that any constitutional violation has been committed by a law enforcement official[] *and* the officer has a realistic opportunity to intervene to protect the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). A realistic opportunity to intervene exists whenever an officer could have "called for backup, called for help, or at least cautioned [the excessive force officer] to stop." *Id.*

The Court addresses each incident in turn.

### 1. Illegal seizure

Tricoci concedes that only officers Blackman and Michael Martinez were personally involved in the initial seizure. Accordingly, the remaining defendants are entitled to summary judgment on count three for failure to intervene during Tricoci's seizure. *See Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in [the] alleged constitutional deprivation.") (citation and quotation marks omitted).

### 2. Excessive force

Tricoci claims that other officers failed to intervene to prevent excessive force on three instances: (1) when Blackman administered the emergency takedown; (2) when Blackman pulled Tricoci in the street; and (3) when an officer slammed Tricoci into a wall at Swedish Covenant while he was in a wheelchair.

#### a. Emergency takedown

It is undisputed that the only officers on the scene when Blackman used the emergency takedown on Tricoci were Blackman and Michael Martinez. Martinez's bodycam footage clearly shows he remained with the police car. Thus he had no

opportunity to intervene when Blackman used the takedown. And the Court has concluded that no reasonable jury could find the takedown was unreasonable. Thus all of the defendants are entitled to summary judgment on the claim of failure to intervene regarding this particular use of force.

      **b.**    **Dragging in the street**

By the time Blackman moved Tricoci while he lay handcuffed in the street, other officers had arrived and did have an opportunity to intervene. The Court has previously concluded, however, that no reasonable jury could find Blackman's use of force to be unreasonable. Thus there can be no liability for failure to intervene. All of the defendants are entitled to summary judgment on the claim of failure to intervene regarding this use of force as well.

      **c.**    **Slammed into wall at hospital**

It is undisputed that only Francis and Rasso were present at Swedish Covenant when Tricoci alleges he was slammed into a wall while being pushed in his wheelchair. The remaining defendants thus had no opportunity to intervene, and as a result they are entitled to summary judgment on this particular claim. Though it is not clear which (if either) of Francis or Rasso allegedly used force, it is undisputed that both officers were present at the time. Thus one could have intervened to prevent the other from using excessive force. Those two defendants are not entitled to summary judgment for failure to intervene on this particular claimed use of force.

**D.**    **Respondeat superior**

In count five, Tricoci alleges that the City of Chicago is liable for the actions of its employees under a theory of respondeat superior. Respondeat superior is not a viable

theory of liability under section 1983.  *See Hanh v. Walsh*, 762 F.3d 617, 638–39 (7th Cir. 2014) ("*Monell* permits suits against municipal entities under § 1983, but only when a governmental policy or custom caused the constitutional deprivation; municipal entities cannot be liable for their employees' actions under a respondeat superior theory.").  Because only section 1983 claims have been asserted in this case, the City of Chicago is entitled to summary judgment on count five.

E.      **Indemnification**

Tricoci likewise asserts a claim against the City of Chicago under 745 ILCS 10/9-102 for indemnification of the defendant officers.  This claim will remain in the case with respect to the remaining claims against Francis and Russo.

F.      **Qualified immunity**

Finally, the defendant officers assert the affirmative defense of qualified immunity.  The Court addresses this only with regard to the claims that remain in the case, regarding the alleged pushing of Tricoci into a wall at the hospital.

A police officer is entitled to qualified immunity when performing a discretionary function that is objectively lawful in light of clearly established law and the information an officer possessed at the time.  *See, e.g.*, *White v. Pauly*, 580 U.S. 73, 78 (2017) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights or which a reasonable person would have known.") (citation and quotation marks omitted).  Once the defense of qualified immunity is raised, "a plaintiff must show (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Ewell v. Toney*, 853

F.3d 911, 919 (7th Cir. 2017).

Tricoci alleges that Francis and Rasso used excessive force by pushing him into a wall while at Swedish Covenant, further injuring his leg. If such force was used, it would be clearly unlawful, as Tricoci was already restrained and not claimed to pose any danger. *See, e.g.*, *Lanigan*, 110 F.3d at 475–76. The dispute over this claim involves whether the underlying event claimed by Tricoci actually happened. Given this genuine dispute of material fact, qualified immunity does not provide a basis for summary judgment. *See Taylor v. City of Milford*, 10 F.4th 800, 807 (genuine dispute of material fact regarding whether police officer used excessive force precludes summary judgment on issue of qualified immunity). Therefore, Francis and Rasso are not entitled to summary judgment based on qualified immunity on the remaining claims against them.

## Conclusion

For the reasons stated above, the Court grants summary judgment in favor of all defendants on counts one, three, and five of plaintiff's complaint and in favor of all defendants other than Francis and Russo on counts two and four. The Court otherwise denies defendants' motion for summary judgment [57]. The Court sets the case for a telephonic status hearing on September 6, 2024 at 9:20 a.m. to set a trial date and discuss the possibility of settlement. The following call-in number will be used: 650-479-3207, access code 980-394-33.

Date: August 27, 2024

_____
MATTHEW F. KENNELLY
United States District Judge